The State, ex rel. Martin Land Development Co., v. Clepper et al.

(No. 278—Decided May 1, 1961.)

*Mr. Wm. A. Geoghegan, Messrs. Dinsmore, Shohl, Dinsmore & Todd* and *Messrs. Nichols, Speidel & Nichols,* for relator.
*Mr. Ralph A. Hill* and *Mr. Charles F. Tilbury,* for respondents.

O'CONNELL, J. The facts in this case disclose that the relator is an Ohio corporation and that the respondents are the trustees of Union Township, Clermont County, Ohio; that the relator purchased for $95,000 on or about November 20, 1958, a tract of land of 130.90 acres, mostly in Union Township but partly in Hamilton County, Ohio, for the purpose of developing the tract as a residential area; that at the time of the purchase the area was unzoned, but thereafter a zoning resolution, which became effective November 8, 1959, was adopted; that by the effective date of the zoning resolution the relator had recorded four plats in the subdivision, such plats being known as Viking Subdivision, Blocks I, II, III and IV; that the remaining lots in that part of the subdivision located in Union Township were to be recorded as Viking Village Subdivision, Block V; that a subdivision plan for the land located in Union Township provided for two hundred and fifty (250) lots, with a minimum area in excess of 7,500 square feet; that this plan, prior to the effective date of the zoning resolution, had been approved by the executive director of the Clermont County Planning Commission and by the Clermont County Engineer; that thereafter the plaintiff proceeded with the necessary improvements; that prior to the effective date of the resolution the relator had completed the sanitary disposal system for the entire subdivision, with the cost

allocable to Block V being $16,000; that the Union Township zoning resolution placed all of relator's property in the township in a district designated as R-1, which requires a minimum lot area of 20,000 square feet and a minimum lot frontage of 100 feet; that the resolution provided also for an R-3 district which requires a minimum lot area of 7,500 square feet, and a minimum lot frontage of 60 feet; and that the frontage and area of all the lots in the subdivision do not conform to the provisions of the R-1 zone provided for in the resolution, but they do comply with the provisions of the R-3 zone.

The facts disclose further that, pursuant to the provisions of the zoning resolution, the relator filed an application to change the zone of the property in block V from R-1 to R-3; that thereafter notice was given and a public hearing was held by the Union Township Zoning Board on May 24, 1960; that the Union Township Zoning Board referred the requested zone change to the Clermont County Planning Commission; that the zoning and land development committee of the Clermont County Planning Commission, at a meeting and hearing attended by the relator and its representatives, considered the matter on April 27, 1960; that thereafter, the committee filed a written recommendation of its findings with the Clermont County Planning Commission, which report was adopted by the planning commission on May 20, 1960; that it recommended to the Union Township Zoning Board that the request for the zoning change be denied, which report and recommendation was sent to the Union Township Zoning Board prior to the public hearing on May 24, 1960; that thereafter, the Union Township Zoning Board, on June 18, 1960, recommended to the trustees of Union Township that the application for the zoning change be denied; that, following the certification of the findings of the zoning board and the planning commission, and after due public notice, the Union Township trustees held a public hearing on July 16, 1960, to consider the requested zoning change; that thereafter, the Union Township Trustees denied the request for a zoning change by notice to the Martin Land Development Company, as applicant, on June 28, 1960; that thereafter, on September 23, 1960, relator filed its petition in mandamus in this matter; that in this petition, the relator asks for a writ of mandamus com-

pelling respondents "forthwith to change the zone of relator's property included on the plat thereof identified as proposed Viking Village Subdivision, Block V, Union Township, Clermont County, Ohio, from R-1 to R-3, and for damages in the sum of thirty thousand ($30,000) dollars, and costs."

It should be noted at the beginning that this action has no reference to blocks I, II, III and IV, but only to block V. It is quite superfluous to quote any cases on the right of the political subdivision to zone or to rezone. The law in Ohio is well settled that there is such power. Of course, the action of the agency must not be capricious or arbitrary or unreasonable. Only under such circumstances may an applicant lay his cause before the court as a necessary substitute arbiter. So, in *Bay (Village)* v. *Borchers*, 15 Ohio Law Abs., 226, it was held in the headnotes that:

"To enforce the provisions of a zoning ordinance prohibiting hotels, rooming houses and restaurant business so as to preclude a home owner who lived within the restricted district from renting two small residences located on her lot to tenants by the month and from maintaining in front of her residence on her lot a neat sign to the effect that she has property to rent and from accommodating tourists over night, would be an unreasonable application and oppressive to such home owner and would violate her constitutional rights under the 14th Amendment to the federal Constitution."

However, "* * * it is considered sufficient if the legislative body could reasonably have had considerations of public health, safety, morals, or general welfare in mind. The matter is largely within the discretion of the legislative authority, which is presumed to have investigated and found conditions such that the legislation which it enacted was appropriate, so that if the facts do not clearly show that the bounds of that discretion have been exceeded, the courts must hold that the action of the legislative body is valid. In this respect, it has been declared that the municipal governing bodies are better qualified because of their knowledge of the situation to act upon those matters than are the courts, which will not substitute their judgment for that of the legislative body." 58 American Jurisprudence, 956, Section 26.

As 42 Ohio Jurisprudence, 815, Section 20, puts the matter: "* * * if the validity of the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control, unless there is a clear abuse of legislative power * * *."

Finally, this quotation from 54 A. L. R., 1016, fits this case exactly. Here is the quotation:

"The exclusion from residential districts by zoning ordinances of business and trade of every sort, including hotels and apartment houses, cannot be said to be so clearly arbitrary and unreasonable, and to have no such substantial relation to the public health, safety, morals, and general welfare, as not to be within the police power."

Let us add that under the R-3 classification, hotels, apartment houses, stores, and other kinds of businesses could be maintained.

And, it is also our opinion that the noncompletion of utilities does not constitute a nonconforming use, but that the completion or virtual completion of residential property would be necessary before such question could even be considered.

Furthermore, it is well settled in Ohio law that before the extraordinary remedy of mandamus can be resorted to, the litigant must have exhausted his remedies by administrative agencies. Section 2731.05, Revised Code, lays down the rule in this language:

"The writ of mandamus must not be issued when there is a plain and adequate remedy in the ordinary course of the law."

And, in *State, ex rel. First National Bank, v. Village of Botkins*, 141 Ohio St., 437, the holding was that to entitle relator to a writ of mandamus, the record must disclose affirmatively that there is no plain or adequate remedy in the ordinary course of the law; in the absence of such showing, the writ will be denied. And, in Skeel's Appellate Law, Chapter 2, page 22 (quoting from *State, ex rel. Harris, Chief of Police, v. Haynes, Mayor*, 157 Ohio St., 214), it is said:

"Where a party had a remedy by appeal, whether he exercised that remedy or not, he cannot ordinarily have the extraordinary remedy of mandamus to secure the same rights which he could have secured by such appeal."

It is our opinion that the relator in this case did not exhaust his administrative remedies.

Therefore, the petition of the relator is hereby dismissed at the costs of the relator, and the writ is denied.

*Writ denied.*

Long, P. J., and Hildebrant, J., concur.