SHEW ET AL., *v.* DEREMER.

(No. 105067—Decided September 26, 1963.)

*Messrs. Amerman, Burt, Shadrach, McHenry & Jones* and *Mr. John P. VanAbel*, for plaintiff.
*Messrs. Black, McCuskey, Souers & Arbaugh* and *Mr. Dan M. Belden*, for defendant.

ROSSETTI, J. This action was brought by a considerable number of persons who live in the area and vicinity of the de-

fendant's property in Pike Township, Stark County, Ohio. The plaintiffs bring this action for the reason that the defendant proposes to build a motor speedway upon his property.

On August 8, 1962, 34 property owners and residents of Pike Township filed a petition against the defendant praying for an injunction to restrain the defendant from constructing an auto racing speedway on his premises. On August 14, 1962, the defendant filed an answer admitting ownership of the premises described, and a general denial as to the other allegations in the petition.

On November 16, 1962, 99 additional property owners of Pike Township petitioned the court to be made parties plaintiff.

On November 23, 1962, the plaintiffs filed a supplemental petition, alleging that after this action was commenced, the Pike Township Board of Trustees adopted a zoning resolution and map to regulate the uses of land in the township, which became effective on November 20, 1962.

On December 17, 1962, J. B. Harbold, Warren Russell and Cecil K. James as Trustees of Pike Township were made parties plaintiff to this action.

The two major issues in this case, (a) the question of whether or not an "existing nonconforming use" under the zoning ordinance can be claimed by defendant, and (b) the question of whether or not the carrying on of the proposed activity would constitute a "nuisance" will be dealt with separately herein.

The question of the establishment of a nonconforming use should not even be considered if that use consists of an activity that is unlawful or improper. However, if the property owner has established a nonconforming use, he would then have established vested rights in the use of his property, and the township should not be allowed to destroy those rights by adopting zoning laws. If the use of the property is not lawful because it constitutes a nuisance, either a nuisance per se (inherently bad) or a nuisance in fact (bad because of surrounding area or circumstance), the township does have the right to zone against such use and prevent it.

The defendant is the owner of an 84.70-acre tract of land in Pike Township, Stark County, Ohio. He purchased from Mr. and Mrs. Ancel Canel, an adjoining property owner, a

50-foot strip of land to be used for a right-of-way and for access to defendant's property.

In connection with the defendant's purchase of the 50-foot strip of land from Mr. and Mrs. Canel for a right-of-way, Mrs. Canel testified in substance as follows:

(a) Defendant, prior to July 11, 1962, made numerous trips to the Canel home to try to purchase a 50-foot right-of-way.

(b) Defendant represented to Mr. and Mrs. Canel that he was going to build a residential allotment and he wanted a good entrance.

(c) Defendant represented to Mr. and Mrs. Canel that he was going to put in good homes but they might not be quite as good as the ones in Maplecrest.

(d) Defendant finally did talk Mr. and Mrs. Canel into selling him the 50-foot right-of-way and a deed was given to the defendant on July 11, 1962.

(e) Defendant, in August 1962, told Mr. and Mrs. Canel that he had the right to change his mind when questioned about the 50-foot strip of land he purchased for the right-of-way to the allotment.

The defendant testified that in his conversations with Mr. and Mrs. Canel, he told them that he wanted to develop the land, but he did not say what kind of a development.

### Zoning—Nonconforming Use

Section 519.24, Revised Code, provides that any adjacent or neighboring property owner who may be especially damaged or the township trustees may institute an action for injunction to prevent the construction of a building or the use of land in violation of a township zoning resolution. It is to be noted that the township trustees need not prove special damage. The special damage to the individual plaintiffs will be considered with the nuisance aspect of the case.

The township zoning map shows that the defendant's land is in a residential district. The zoning resolution does not include a commercially operated motor vehicle race track among the uses permitted in a residential district.

The defendant claims that he has established a nonconforming use and is entitled to continue that use.

The defendant relies on the following things to establish vested rights and be entitled to protection:

(a) The planning of a project over a two-year period.
(b) The expenditure of over $10,000.
(c) The securing of a right-of-way.
(d) The purchasing and installing of a culvert for drainage.
(e) The "roughing in" of a track.
(f) The construction of a road and parking area.
(g) The grading down of a spoil bank.
(h) The installing of footers for a refreshment stand.
(i) The clearing of hedgerows and trees.
(j) The contracting of a surveyor for plans and surveys.

Ordinarily, where no work has been commenced, or where only preliminary work has been done without going ahead with the construction of the proposed building, the fact that plans had been made for the erection of a building before the adoption of a zoning ordinance prohibiting the kind of building contemplated is held not to exempt the property from the operation of the zoning regulation.

A mere contemplated use is insufficient to establish an existing nonconforming use within the meaning of a zoning law exempting nonconforming uses in existence at the time of the enactment or effective date of the law.

Section 519.19, Revised Code, provides that "The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with such resolution or amendment * * *."

The Pike Township zoning resolution became effective on November 20, 1962, and the defendant had done nothing to establish the existence of a motor vehicle speedway prior to that date. At most he had only expressed an intention to use the land as a speedway. True, he had done certain things to the land, but he had done nothing relating exclusively to the use of the land as a speedway. It can be said that the work that was undertaken before November 20, 1962, is preliminary to uses of many types.

In the case of *Smith* v. *Juillerat,* 161 Ohio St. 424, we quote the fourth paragraph of the syllabus:

"Where no substantial nonconforming use is made of property, even though such use is contemplated and money expended

in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property.''

Thus, it seems mere preparation, even though money is expended, does not constitute such a use as will constitute a nonconforming use. The activity must (a) be in actual use, (b) be a nonconforming use, and (c) be existing at the time of the adoption of the zoning ordinance.

In the case of *State, ex rel. Mar-Well, Inc.,* v. *Dodge,* 113 Ohio App. 118, the Court of Appeals for Summit County held that even though an allotment plat was approved and recorded prior to the adoption of the zoning ordinance, this was not enough to constitute a nonconforming use. In the case of *State, ex rel. Martin Land Development Co.,* v. *Clepper,* 113 Ohio App. 375, the Court of Appeals for Clermont County held that the mere installation of a sanitary system in an allotment was not sufficient.

It is apparent that what little the defendant did was only preliminary work toward site preparation for some use. Nothing was done relating exclusively to the use as a speedway. The defendant failed to do anything either substantial or nonconforming.

It is the court's opinion that in order to constitute an existing nonconforming use, the activity to be protected must be in actual use and in existence at the time the zoning ordinance is adopted. There must be more than mere preparation, and the expenditure of money is not necessarily the test.

### NUISANCE

The term ''nuisance'' has been defined many times and the definitions differ in some minor respects. Literally, ''nuisance'' means ''annoyance,'' and in its broadest sense it is that which annoys or gives trouble or vexation; that which is offensive or noxious.

A ''nuisance'' has also been defined as anything which endangers life or health, gives offense to the senses, endangers the comfort, repose, safety or morality.

The defendant testified that he would like to build a race track similar to the one at Findlay and Midvale, Ohio. He testified that races would be conducted at night and that time trials

would start about 6:45 p. m.; that the evening races would last from eight until approximately ten-thirty or later. He further testified that there will be about eight events a night, and that the race track would be lighted up, and approximately four to seven thousand spectators would attend the races; that approximately three to four thousand automobiles carrying the spectators would be visiting the race track at one time.

The defendant testified further in substance as follows:

(a) That he would build an auto racing speedway—a half mile track approximately 475 feet wide and 1075 feet long.

(b) That there would be ten to twelve cars in a race.

(c) That races would usually be eight laps long.

(d) That there would be one feature race.

(e) The cars would travel 80 to 90 miles an hour.

(f) There would be eight events in one night.

(g) That time trials would start at 6:45 p. m.

(h) That approximately forty cars would participate in a one night program.

(i) That there would be lights for the track and parking area.

(j) That the defendant might have a 100-lap race for an Ohio invitational event.

(k) That unmuffled cars would operate on the track.

(l) That the defendant would operate the track approximately twenty times a year—maybe on Sundays—from May until September 15th.

Some residents near the area of the Midvale track testified as follows:

Mrs. Swinderman. Lives 100 to 200 feet from the track. The races start at approximately 6:45 p. m., and race until 10 to 12 p. m. While the races are being run cannot watch television, have company in the house, or sleep during this period of time.

Mrs. Clyde Shaffer. Lives 300 feet from the Midvale track. Between 5 and 5:30 p. m., hot rodders start to pull in at the track. The noise is terriffic—can't watch television or sleep, and that the races cause traffic problems. The time trials usually start at about 7 p. m.

Charles W. Sours. School board member. Lives .3 of a mile from the Midvale Speedway. Races are run every Sunday

night—sometimes twenty cars are on the track at once—can't have visitors on account of the noise. Time trials start one hour before the races. The races usually last until 11 p. m., and sometimes later. The races cause dust and smoke at the track —traffic problems—can't sit outside while races are in operation.

Richard Mansfield. Visited a sister who lives in Midvale, Ohio. Said that the noise from the track was noticeable.

Mrs. Thomas. Has gone to the races for five years—says that the noise never bothered her—there is noise. She likes the races and the excitement.

Robert Scanlon, professor at Case Institute of Technology, testified that he made experiments and measured the sound level at the Findlay race track. He testified that while there at a distance from the race track he could hear the PA system and that there was objectionable noise from the track.

There is no question that this speedway will attract people in such numbers that it will obstruct access to the neighboring premises.

There are other factors to consider, such as casting light on other premises in connection with the operation of the speedway, traffic, dust and noise.

The traffic problem created would in my opinion be serious. The only ingress to the race track would be by way of Howenstine Drive. The paved portion of Howenstine Drive is only 15 feet wide. Egress would be by way of Howenstine Drive and Stinewood Avenue which is even narrower than Howenstine Drive. Stinewood Avenue is capable of carrying only one lane of traffic.

By reason of the time trials and the racing events, there would be a serious traffic problem in the neighborhood before the program and also one after the program.

It cannot be denied that in the operation of this race track there will be considerable noise. ''Noise'' is taking its place alongside of air and water pollution as a major and growing concern of governments.

Right now, it is the noises of modern jet aircraft that are getting a major share of attention. But the scream and roar of the jets is only part of the problem. Both health authorities and sound engineers say that over-all noise is intensifying so

rapidly that it is threatening to get completely out of control.

A government committee in Great Britain has said, "There is no doubt that noise affects health, but the general effect is more psychological than physical."

United States medical researchers have gone further in suggesting that noise can damage hearing, general health and the nerves.

Here we have a location designed and zoned as a residential area with many fine and valuable homes, and with all the peace and quiet one would desire. Then, the defendant, who sold the real estate to many of these residents now desires to put in a motor racing speedway in this residential area.

Moreover, the defendant made certain representations that he was going to develop his property and build homes thereon. On the basis of this representation he was able to purchase a right-of-way in order to gain access to his property from Howenstine Avenue. It appears to this court that the defendant changed his mind concerning the purpose of the right-of-way property.

This commercial venture, accompanied with the factors which go with such a race track operation, would disturb the peace, enjoyment, comfort, health, safety and welfare of the residents of this community. These people have a right to the full enjoyment of their properties. Certainly these residents after building their homes in this residential area should not be subjected to anything which would injure or damage the value of their properties.

In conclusion, it is the court's opinion that the defendant has not established a nonconforming use of his property prior to the adoption of the zoning resolution by Pike Township. Secondly, on the basis of the evidence presented, it is the court's opinion that the operation of an automobile speedway on the premises in question would constitute a nuisance.

The defendant is permanently enjoined from using his land as a motor vehicle speedway.

*Judgment accordingly.*