OPINION
Plaintiffs-appellants Jackson Township Board of Trustees and the Office of Jackson Township Zoning Inspector, appeal a decision by the Franklin County Municipal Court, Environmental Division. The court found that appellants were not entitled to injunctive relief against defendants-appellees, Donrey Outdoor Advertising Company, Gibson Investments L.L.C., and American Awards. We affirm.
On January 1, 1986, Glenn Gibson entered into a lease agreement with Donrey Outdoor Advertising Company ("Donrey") to allow Donrey to use a portion of his property for an outdoor advertising billboard. The property is located in Jackson Township, Franklin County, Ohio. Donrey secured a "Certificate of Zoning Compliance" on January 15, 1986 for the billboard. The certificate noted that construction needed to be started within six months of the issuance date or the certificate would be void. In March 1986, Donrey commenced construction of the billboard by cementing a thirty foot pipe into the ground which would be used as the base for the billboard. Only about a four to five foot portion of the pole was left above the ground. Donrey refers to this procedure as "stubbing in" the pipe and the section that is left above the ground is called the "stub." The cost of "stubbing in" the pipe was $5,750. Over the next twelve years, Donrey made lease payments in excess of $54,000 to Gibson and other owners of the property where the stub is located.
In October 1986, the Jackson Township Board of Trustees ("township board") amended the zoning ordinances such that the billboard Donrey was authorized to construct according to the certificate was no longer defined as a permitted use. The township board also passed an ordinance in 1993 allowing zoning certificates to be "valid for a period of one (1) year as measured from the date of issuance." Previous to the change, Jackson Township zoning certificates did not have an expiration date other than the requirement that construction needed to begin within six months after the issuance of the certificate.
Sometime in June or July 1998, Donrey attached a fifty-seven foot pole on top of the stub in order to complete construction of the billboard. On July 20, 1998, appellants filed a complaint with the court, requesting declaratory and injunctive relief against appellees. Appellants requested an order "containing a mandatory injunction and/or restraining order compelling [appellees] * * * to immediately remove the billboard structure, support and base, and permanently enjoining [appellees] from committing or allowing future or similar violations of the [zoning] Resolution to occur." On September 17, 1998, the trial court denied appellants' request for injunctive relief and held that appellees had a right to complete construction of the billboard. Appellants appeal this decision and present the following five assignments of error.
 I. The trial court erred when it concluded that Donrey's 1998 erection of a billboard and supporting pole structure was lawful because of a Certificate of Zoning Compliance issued twelve and one-half years before, notwithstanding the fact that when the billboard was erected it admittedly violated the then applicable height, size, spacing and location requirements of Jackson Township Zoning Resolution.
 II. The trial court erred when it failed to find that whatever lawful non-conforming use right may have once applied to Donrey's billboard had been abandoned and otherwise lost due to Donrey's failure to complete the structure, or use the structure as a billboard, for more than twelve continuous years.
 III. The trial court erred when it inexplicably failed to hold that Donrey's 1986 Certificate of Zoning Compliance had expired, where since 1993 Jackson Township Zoning Resolution expressly provided that Certificates of Zoning Compliance expired after one year.
 IV. The trial court erred when it found that 1998 construction of the billboard lawful, where the construction did not conform to the specifications contained in the only permit ever issued for a billboard at the location, which permit was issued in 1986.
 V. The trial court erred when it failed to hold that Donrey was required to apply for and obtain a building permit in order to complete construction of it's [sic] Jackson Township billboard.
A review of appellants' assignments of error shows that they address a single issue: whether the trial court erred in finding that appellants were not entitled to permanent injunctive relief. The trial court's decision was based upon the finding that "because of [appellees'] costs, certain lease payments, and industry custom and practice, establish in Donrey a right to complete the sign and to claim an RC 519.19 non-conforming use exemption."
The zoning authority possessed by townships in the state of Ohio is limited to that which is specifically conferred by the General Assembly. Bd. of BainbridgeTwp. Trustees v. Funtime, Inc. (1990), 55 Ohio St.3d 106, paragraph one of the syllabus. The General Assembly has specified that township zoning is to be regulated by a system of zoning certificates pursuant to R.C.519.16. Torok v. Jones (1983), 5 Ohio St.3d 31, 32. A township's power to enforce zoning regulations is not absolute because zoning regulations of previously permitted uses of a property may be found to be unenforceable pursuant to either R.C.519.19 or the United States Constitution.
R.C. 519.19 states in part:
 The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with such resolution or amendment * * *.
The use of a property which was lawful prior to the enactment of a zoning ordinance and which use may be continued after the effective date of the ordinance even though it does not comply with the applicable use restrictions is defined as a "nonconforming use." C.D.S., Inc. v. Gates Mills (1986), 26 Ohio St.3d 166,168. "Owners are permitted to continue a nonconforming use based on the recognition that one should not be deprived of a substantial investment which existed prior to the enactment of the zoning resolution." Beck v. Springfield Twp. Bd. of Zoning Appeals (1993), 88 Ohio App.3d 443, 446.
In the present case, when the township board amended the zoning ordinances in October 1986, the billboard Donrey had been authorized to construct according to the zoning certificate was no longer considered a permitted use. However, at the time the amended zoning ordinances became effective in October 1986, the billboard existed only as a stub. Therefore, appellees cannot claim a nonconforming use exemption pursuant to R.C. 519.19 in order to construct a billboard because R.C. 519.19 protects the lawful use of any dwelling, building, or structure and of any land or premises "as existing and lawful at the time of enactment of a zoning resolution or amendment thereto."[1] R.C. 519.19 only protects existing uses and not nonexisting future uses.
However, in addition to the protections afforded by R.C.519.19 to property owners from changes of zoning ordinances by a township, a property owner's "vested rights" in a property are also protected constitutionally. "The Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution recognize a right to continue a given use of real property if such use is already in existence at the time of the enactment of a land use regulation forbidding or restricting the land use in question." Dublin v. Finkes (1992), 83 Ohio App.3d 687,690, following Akron v. Chapman (1953), 160 Ohio St. 382, paragraph two of the syllabus.[2] The Ohio Supreme Court has stated:
 The fact that zoning ordinances in this state and elsewhere except preexisting uses of land from the operation of use restrictions can be explained on the basis of constitutional principles. An existing use is said to be the subject of a vested right in the user. As such, to prohibit such use by enforcing subsequently enacted zoning ordinances would amount to the taking of the user's property without due process of law. Clifton Hills Realty Co. v. Cincinnati (1938), 60 Ohio App. 443
see also; Cicerella v. Jerusalem Bd. of Zoning Appeals (1978), 59 Ohio App.2d 31. * * *
C.D.S., Inc., at 169, fn. 2. "Although zoning ordinances may regulate pre-existing, non-conforming uses, and may even contemplate the gradual elimination of the nonconforming use, they may not deprive the owner of a vested right." Village of Kelley's Island v. Johnson (Jan. 26, 1996), Erie App. No. E-95-030, unreported, following Akron, supra.
Unlike R.C. 519.19, Ohio courts have interpreted the constitutional protections to allow a person to have a "vested right" to the use of a property even though the contemplated use is not possible at the time of the effective date of a zoning resolution. The Ohio Supreme Court, however, has placed limitations on what can be considered a "vested right." In Smith v. Juillerat (1954), 161 Ohio St. 424, paragraph four of the syllabus, the court stated:
 Where no substantial nonconforming use is made of property even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property.
Further, a property owner fails to acquire a vested right to complete construction and fails to establish a nonconforming use under a township zoning resolution where there has been no: (1) substantial change of position, (2) expenditures, or (3) significant incurrence of obligations in reliance upon the zoning permit. Torok, at paragraph two of the syllabus. "Substantial" has been defined as "`[s]omething worthwhile as distinguished from something without value or merely nominal.'" Saxton v. Middleburg Church of Christ (Dec. 21, 1989), Logan App. No. 8-88-25, unreported, quoting Black's Law Dictionary (5 Ed. Rev. 1979) 1280.
It is not necessary for a person to substantially complete a structure in order to have a vested right to complete the structure. For example, in Bd. of Warren Cty. Commissioners v. Nextel Communications (Apr. 26, 1999), Warren App. No. CA98-09-115, unreported, the Twelfth District Court of Appeals found that Nextel had the right to construct a telecommunications tower even though Nextel had not begun actual construction of the tower at the time changes occurred in the notification requirements for R.C. 303.211. The court stated:
 * * * Under Torok, the court's focus is not solely upon whether the property owner has started actual construction upon the property, but the court must also inquire as to whether the owner has changed his position, expended significant time, effort or money, or incurred significant obligations. * * *
Id. The court found that Nextel had a vested right to complete the construction of the tower based upon evidence that Nextel:
 * * * had engaged in extensive bidding and negotiations in seeking a firm to construct the tower, in securing the lease to the * * * property, and in surveying and preparing the construction site. In addition, [Nextel] had secured from [appellants] the required permits to build the tower. Therefore, we find that [Nextel] had taken action beyond mere preparation and planning, and that [Nextel] had established a nonconforming use upon the * * * property prior to the amendment of R.C. 303.211. * * *
In the present case, the trial court found that appellees had acquired a vested interest in the property even though appellees had not completed construction of the billboard. The court stated:
 Even though no advertising has been done by Donrey * * *, Donrey had made substantial expenditures and had made a significant incurrence of obligation in reliance on the certificate by October, 1986. The "stubbing in" costs and the lease payments from January 1, 1986 to October, 1986 to the owner to secure the stubbed-in site represent substantial expenditures and significant obligations incurred. These costs, while not a majority of the costs needed to complete the billboard, are not without value and are not merely nominal.
A review of the record supports the trial court's conclusions that appellees' use of the property was "substantial" as evidenced by the construction of the base of the billboard and the continued payment of the lease. Therefore, we find that the trial court did not abuse its discretion in holding that appellees had the right to complete construction of the billboard.
Appellant also claims that the trial court should have followed the reasoning of Shew v. Deremer (1963), 2 Ohio Misc. 65. In Shew, the court found that the property owner did not have a vested right to build a motor speedway even though the property owner had: (1) planned the project over a two-year period; (2) expended over $10,000; (3) secured a right-of-way; (4) purchased and installed a culvert for drainage; (5) "roughed in" the track; (6) constructed a road and a parking area; (7) graded a "spoil bank"; (8) installed footers for a refreshment stand; (9) cleared hedgerows and trees; and (10) contracted a surveyor for plans and surveys. Id. at 68. However, our decision is not inconsistent with Shew because we have found that appellees cannot claim a right to complete construction of the billboard pursuant to R.C.519.19. Additionally, the court in Shew was a court of common pleas and it did not review whether the property owner had a constitutional right to complete the construction of the race track.
Appellant also argues that we should follow O'Brien v. City of Columbus (Feb. 6, 1990), Franklin App. No. 89AP-877, unreported (1990 Opinions 333), where we held that a person no longer had a vested right to rely on a previous zoning classification "[o]nce the [building] permit expires, a reasonable time has lapsed or construction is completed." O'Brien, at 339. Since the present case does not involve a building permit or the modification of a completed structure, the only issue O'Brien raises is whether "a reasonable time has lapsed."
In the present case, the trial court addressed the issue of the timeliness of the completion of the billboard. In its findings of fact, the court stated:
 12. Donrey had the financial resources to complete the billboard construction in early 1986, but chose not to because it made a business decision that there was no demand at that time to begin the sale of advertising space at that location.
 13. Donrey chose to complete the structure in the middle of 1998 because it had lost a sign location within the vicinity of 2380 Harrisburg Pike, and so sought to fill a void in its inventory of sign locations in that area.
 14. It is a billboard industry practice in Franklin County to stub in some sites and then later complete construction of the billboard. The existence of this stub deprives other billboard competitors from erecting signs within 1,000 [feet] of the stub site.
The court also stated in its conclusions of law: "Twelve years is a significant period of time. Yet the syllabus law that guides this Court speaks not to significant time but to substantial expenditures and significant incurrences of obligations. The latter two, this Court rules, controls over the former." We agree with the trial court's reasoning and find that based upon the billboard industry practice of "stubbing" and completion as presented to the trial court, the billboard would be built within a "reasonable time" even though construction would be completed twelve years after it began.
Appellants further argue that appellees did not comply with the original zoning certificate because the billboard that was being completed would be fifty-seven feet tall and the proposed billboard would have been eighty feet tall. However, our research has not revealed any case law that states that a zoning certificate is invalid simply because the proposed billboard is larger than the completed billboard. Also, appellants certainly do not argue that an eighty foot billboard is more desirable than a fifty-seven foot billboard.
Lastly, appellants argue that appellees needed to obtain a building permit before construction was completed on the billboard. However, appellants state in their appellate brief that when "the Certificate of Zoning Compliance was initially sought in 1986, the Ohio Basic Building Code did not require building permits for billboards." Since a building permit was not required to construct a billboard in 1986 and there is little doubt as to whether the township board would grant a request from appellees for a building permit, we find that based upon the previously stated constitutional principles regarding vested rights to complete construction, that appellees were not required to obtain a building permit to complete construction of the billboard.
Accordingly, we find that appellants were not entitled to permanent injunctive relief because appellees had acquired a vested right to complete construction of the billboard. Appellants' assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas, Environmental Division, is affirmed.
Judgment affirmed
LAZARUS, P.J., and PETREE, J., concur.
[1] Appellees could argue that pursuant to R.C. 519.19 that they have a right to the use of the stub as it existed at the time of the zoning amendment. However, we will not address this argument since appellees did not address this issue.
[2] Section 1, Fourteenth Amendment to the United States Constitution states in part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." Section 16, Article I of the Ohio Constitution states in part: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."